**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NELSON MORA,
*on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

DUFOUR PASTRY KITCHENS INC.,
and CARLA KRASNER,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff NELSON MORA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, DUFOUR PASTRY KITCHENS INC. ("Corporate Defendant"), and CARLA KRASNER (the "Individual Defendant" and collectively with the Corporate Defendant, "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime wages, due to time shaving; (2) unpaid overtime wages, due to

failure to compensate for short breaks lasting less than twenty (20) minutes; (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving; (2) unpaid wages, including overtime, due to failure to compensate for short breaks lasting less than twenty (20) minutes; (3) unpaid spread of hours premiums; (4) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law; (5) failing to provide proper wage statements, per requirements under the New York Labor Law; (6) liquidated damages; (7) statutory penalties due to WTPA violations; and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5. For all relevant periods, Plaintiff was a resident of Bronx County, New York.

6. Individual Defendant CARLA KRASNER is a co-founder[1] and owner of DUFOUR PASTRY KITCHENS INC. CARLA KRASNER exercises—and delegates to managers and supervisors—the power to fire and hire employees, supervise and control employee work

[1] The other co-founder, Judith Arnold, passed away on or about January 19, 2022. Whether probate of Judith Arnold's estate has concluded rests within Defendants' knowledge and possession. Plaintiff reserves the right to amend this Complaint to include Judith Arnold as a defendant.

schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class.

7. Individual Defendant CARLA KRASNER exercised functional control over the business and financial operations of the Corporate Defendant.

8. Corporate Defendant DUFOUR PASTRY KITCHENS INC. is a domestic business corporation organized under the laws of the State of New York and authorized to do business in the State of New York, with a principal place of business located at 251 Locust Avenue, Bronx, NY 10454. DUFOUR PASTRY KITCHENS INC. specializes in the manufacturing and distribution of frozen, ready to bake puff pastry dough.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

9. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including production associates, pastry chefs, assembly workers, food preparers, packers, among others), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

10. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' policies of time shaving. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

11. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

12. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including production associates, pastry chefs, assembly workers, food preparers, packers, among others), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

13. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

14. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

15. Plaintiff's claims are typical of those claims that could be alleged by any Class Member, and the relief sought is typical of the relief, that would be sought by each Member of the Class in separate actions. All Class Members were subjected to Defendants' same corporate practices, as alleged herein, of Defendants' failure to pay all wages, including overtime: (1) unpaid wages, including overtime wages, due to time shaving; (2) unpaid wages, including overtime, due to failure to compensate for short breaks lasting less than twenty (20) minutes; (3) unpaid spread of hours premiums; (4) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law; and (5) failing to provide proper wage statements, per requirements under the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

16. Plaintiff can fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

17. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

18. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

19. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants provided Plaintiff and Class Members uninterrupted meal breaks;

e) Whether Defendants compensated Plaintiff and Class Members for short breaks of twenty (20) minutes or less;

f) Whether Defendants paid Plaintiff and Class Members their owed spread of hours premiums;

g) Whether Defendants paid Plaintiff and Class Members for all hours they worked;

h) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

i) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

20. Plaintiff was employed by Dufour Pastry Kitchens as a dough worker from approximately December 2019 to March 2020, when the business closed due to COVID-19, and again from June 2021 to January 2025.

21. Plaintiff was paid $15.00 per hour at the start of his employment by Defendants. Plaintiff's hourly rate gradually increased to $19.00 per hour over the course of his employment.

22. Plaintiff was scheduled to work five days per week, Mondays through Fridays, from 7:00 AM to 3:30 PM, for a total of forty-two and one-half (42.5) hours per week. Plaintiff also often worked a sixth or seventh day per week, from 7:00 AM to 3:00 PM. Every day that he worked, Plaintiff stayed one (1) to three (3) hours after his scheduled shift on the clock.

*Unpaid Wages due to Time Shaving*

23. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

24. During his employment, Plaintiff was entitled to a thirty (30) minute unpaid meal break. However, managers employed and supervised by Defendants regularly required Plaintiff to work through their breaks. Nonetheless, thirty (30) minutes would be automatically deducted from his total hours each workday. FLSA Collective Plaintiffs and Class Members were similarly required to work through or during their meal breaks but were not paid for this time due to Defendants' time shaving.

25. At all relevant times, FLSA Collective Plaintiff and Class Members were similarly subjected to the same time shaving policies and required by Defendants to engage in unpaid labor daily without any compensation.

26. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

27. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and the Class for all hours worked, due to Defendants' policy of time shaving, in violation of the FLSA.

*Claims of Unpaid Short Breaks*

28. Plaintiff was given a fifteen-minute break per shift. Although Defendants were required by law to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members for short rest breaks of under twenty (20) minutes, Defendants did not compensate them for such breaks. Rather, Defendants required that Plaintiff, FLSA Collective Plaintiffs, and Class Members clock out.

29. Defendants violated the FLSA's "bright line time test" pursuant to 29 C.F.R. 785.18, under which Defendants were required to compensate Plaintiff for breaks lasting from five (5) minutes to about twenty (20) minutes:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (*Mitchell v. Greinetz*, 235 F. 2d 621, 13 W.H. Cases 3 (10th Cir., 1956); *Ballard v. Consolidated Steel Corp., Ltd.*, 61 F. Supp. 996 (S.D. Cal. 1945)).

30. The same is true under NYLL, since "[t]he NYLL incorporate[s] [the] FLSA['s] standards for determining whether time worked is compensable time." *Perkins v. Bronx Lebanon Hosp. Ctr.*, 2016 U.S. Dist. LEXIS 151364, at *3 n.6 (S.D.N.Y. Oct. 31, 2016) (internal quotation marks and citation omitted)); *see also Martin v. Waldbaum, Inc.*, 1992 U.S. Dist. LEXIS 16007, at *6 (S.D.N.Y. Jan. 5, 2012) ("the Court finds, as a matter of law, that breaks of less than twenty minutes are compensable") (emphasis added); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 121 (S.D.N.Y. 2011) ("Rest periods of short duration must be counted as hours worked.") (citing 29 C.F.R. § 785.18); *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 432 (3d Cir. 2017)

("[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. . . . [E]mployers and employees are best served by the bright line time test currently provided in Section 785.18.") (citation omitted).

31. At all relevant times, FLSA Collective Plaintiffs and Class Members were subjected to similar practices and was not compensated for short breaks.

32. Through their unlawful time-shaving practices, Defendants injured Plaintiff MORA, FLSA Collective Plaintiffs, and Class Members by categorically reducing their compensable time every week.

*Claims of Unpaid Spread of Hours Premiums*

33. At all relevant times, Defendants failed to compensate spread of hours premiums to Plaintiff and Class Members for all days they worked with a spread of ten (10) or more hours, in violation of the NYLL.

34. Throughout their employment, Plaintiff was required by Defendants to work days with a spread of ten (10) or more hours as he was required to stay one to three hours past his scheduled shift. Class Members were similarly required by Defendants to workdays with a spread of ten (10) or more hours.

35. However, Defendants failed to pay Plaintiff and Class Members their owed spread of hours premiums for every workday lasting ten (10) or more hours.

36. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their properly owed spread of hours premiums, in violation of the NYLL. Defendants' awareness and willfulness is apparent because Defendants

regularly scheduled Plaintiff and Class Members to work shifts of ten (10) hours or longer workdays and failed to compensate them with any spread of hours premiums accordingly.

*Claims of WTPA Violations*

37. At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants.

38. At all relevant times, Plaintiff and Class Members did not receive proper wage statements from Defendants.

39. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

40. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020)

41. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and proper paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

42. Had Defendants provided to Plaintiff and Class Members proper wage statements, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours they actually worked and the spread of hour premiums earned or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employees actually worked and the premiums that the employee actually earned. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

43. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

44. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS

through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the Plaintiffs earned $ 133,086 as reflected on his final year paystub and W-2").[2]

45. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

46. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

[2] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

47. Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had number of hours and the spread of hours premiums been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

48. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he

> Plaintiffs' real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

49. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and Class Members rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "[p]laintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

50. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

51. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

52. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

53. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

54. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and have agreed to pay the firm a reasonable fee for its services.

## **STATEMENT OF CLAIM**

## **COUNT I**

## **VIOLATION OF THE FAIR LABOR STANDARDS ACT**

55. Plaintiff realleges and incorporates the above allegations as if fully stated herein.

56. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA,

29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

57. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

58. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages for all hours worked, due to a policy of time shaving.

59. At all relevant times, Defendants had a policy and practice that failed to compensate Plaintiff and FLSA Collective Plaintiffs for breaks lasting from five (5) minutes to about twenty (20) minutes.

60. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

61. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

62. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

63. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including unpaid overtime wages, and liquidated damages.

64. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

65. Plaintiff realleges and incorporates the above allegations as if fully stated herein.

66. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

67. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay wages for all hours worked due to time shaving.

68. Defendants willfully violated Plaintiff's and Class Members' rights by failing to compensate them for breaks lasting from five (5) minutes to about twenty (20) minutes.

69. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hours premium for all their shifts worked in excess of ten (10) hours.

70. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

71. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

72. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

73. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: their unpaid wages due to timeshaving and unpaid short breaks, unpaid spread of hours premiums, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime wages and premiums, as a result of time shaving, due under the FLSA and the NYLL;

d. An award of unpaid wages, including overtime wages and premiums, as a result of unpaid short breaks, due under the FLSA and the NYLL;

e. An award of unpaid spread of hours premiums, due under the NYLL;

f. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

i. Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment;

j. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

l. Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as a Representative of the Class;

o. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 19, 2025
New York, New York

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*